CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
SHOLEM WEISNER and SHMUEL NEMANOV,
          Plaintiff and
          Involuntary Plaintiff,

-against-              Case No.
                      20-cv-0286-AKH
GOOGLE LLC,

                      Defendant.

-------------------------------------x

SHOLEM WEISNER,

          Plaintiff,

-against-              Case No.
                      23 Civ. 8186(AKH)
GOOGLE LLC and SHMUEL NEMANOV,

          Defendant and
          Involuntary Party.
-------------------------------------x
CONFIDENTIAL - ATTORNEYS' EYES ONLY

          VIDEOTAPED DEPOSITION OF
              SHOLEM WEISNER
            New York, New York
            February 12, 2025


Reported By:

ERIC J. FINZ

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 38

SHOLEM WEISNER - Highly Confidential

Q.   So in 2016 you got a Lincoln MKZ and you used it to drive --

A.   I didn't really drive it. Friends drove it more than me.  I was driven.  My license wasn't good then, I think.

Q.   So in 2016, you got a Lincoln MKZ.  And are you saying you never drove it?

A.   No, I drove it.

Q.   Okay.

A.   But not so much.

Q.   Okay.  So in 2016 you got a Lincoln MKZ and you used that occasionally to drive back and forth from upstate New York to the city?

A.   Yes.

Q.   And during what time did you drive the Lincoln MKZ?

A.   What do you mean?  From the end of 2016 to like 2019, I think.

Q.   Okay.

A.   I'm not sure.  I think it was a three-year lease.

Page 39

SHOLEM WEISNER - Highly Confidential

Veritext Legal Solutions

800-567-8658                                        973-410-4098

CONFIDENTIAL - ATTORNEYS' EYES ONLY



15 (Pages 54 - 57)

CONFIDENTIAL - ATTORNEYS' EYES ONLY



17 (Pages 62 - 65)

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Veritext Legal Solutions

800-567-8658                                                    973-410-4098

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Veritext Legal Solutions

800-567-8658                                                        973-410-4098

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Veritext Legal Solutions

800-567-8658                                                       973-410-4098

CONFIDENTIAL - ATTORNEYS' EYES ONLY



34 (Pages 130 - 133)

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Veritext Legal Solutions

800-567-8658                                                                    973-410-4098

CONFIDENTIAL - ATTORNEYS' EYES ONLY



42 (Pages 162 - 165)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 190

SHOLEM WEISNER - Highly Confidential

MR. OUSSAYEF:  Let's go ahead and take a break.

THE VIDEOGRAPHER:  This will end media unit 3.  Going off the record at 2:49.

(A recess was taken.)

Page 191

SHOLEM WEISNER - Highly Confidential

A F T E R N O O N   S E S S I O N

3:31 p.m.



Veritext Legal Solutions

800-567-8658

973-410-4098

CONFIDENTIAL - ATTORNEYS' EYES ONLY



51 (Pages 198 - 201)

Veritext Legal Solutions

800-567-8658                                                                973-410-4098

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 254

SHOLEM WEISNER - Highly Confidential
it's putting the right pieces together. It's like coming up with a certain network that works.

I think that my patent is more like a business model than an invention of any tech, I think it's more a way out to, you know, innovate business and the internet. And making search engines that already exist on the internet better and more tailored for both the individual and the person that looks to the vendor member that's looking to benefit his advertisement or anything through the individual member.

Just the, you know, the piping, you put it together, the piping I think is -- I mean, you don't have to invent vendor members. It's about putting together the thing. It's about the apparatus.

Q. Google was doing advertising before your invention; true?

A. True. But not based on physical location histories.

Page 255

SHOLEM WEISNER - Highly Confidential
Q. Google was doing searching before your invention. True?

A. Not based on physical location histories.

Q. When you say that Google's searching is based on physical location histories, what do you mean by that?

A. I mean takes into consideration where you went yesterday, where your bodies that go to the place that you went yesterday, takes into consideration, you know, your location history, the vendors that you use, what type of vendor members you use, do you use culture vendor members.

Now, there is also search, you can make searches. And this type of things Google used, everybody cyber activity Google used a lot. Google was doing all these cyber activity filtering. But they didn't take into consideration physical activities of a person.

And also they didn't even talk about how to take physical activities and

Page 256

SHOLEM WEISNER - Highly Confidential
directly pair it, you know, directly intertwine it with the internet.

Q. What is the difference between searching based on a user's physical location and searching based upon a user's physical location history?

MR. DAVIS: Object to the form of the question.

A. Physical location --

MR. DAVIS: Object to the form of the question.

Go ahead.

A. Being physical location like where are they now?

Q. Yes. And I'll just re-ask the question because we got objections, to make the record clear.

What is the difference between searching based on a user's physical location and searching based upon a user's physical location history?

A. So a user's physical location right now is also location history. The argument is like a minute ago, is it

Page 257

SHOLEM WEISNER - Highly Confidential
history.

So what do you mean by history? My patents don't cover where he is now when he sits at home, or when he sits in a park. It's only about businesses that he visited. So if he's in a mall now or a minute ago he was in a mall, that's already part of the location history. Somebody makes a search and it shows up that a minute ago he was in that store, that's already location.

So the now and the history is very, very close to each other. A person goes through his day and he makes a search now and the history is the minute ago is the now, and the now is this. It's all about mostly vendor members. I mean, I do mention in my patent, you know, what street the person crossed. But knowing what street the person crossed is also because he was by a certain vendor member.

I didn't care so much where a person is, only about the vendor members

65 (Pages 254 - 257)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 302

SHOLEM WEISNER - Highly Confidential

Q.   Now this claim is much longer than the one that you filed in the '798 application. Fair?

A.   Not so much longer, no.

Q.   Well, the Claim 1 that you filed in the '165 application is longer than the Claim 1 that you filed in the '798 application. Fair?

MR. DAVIS:  Object to the form of the question.

A.   A little longer. I have to look again.

Q.   The claim that you filed in the '165 application is narrower than the claim that you filed in the '798 application. True?

MR. DAVIS:  Object to the form of the question.

A.   I'm not sure.

MR. DAVIS:  Hold on. Object to the form of the question; calls for a legal conclusion.

A.   I'm not sure.

Q.   Well, the claims that you

Page 303

SHOLEM WEISNER - Highly Confidential

filed in the '165 application included all of the concepts of the claims that you filed in the '798 application, and also added additional limitations. Fair?

A.   I'm not sure if the claims. I'm not sure the claims. The description for sure. The description in the '165 is much richer. But I'm not sure about the claim. I have to look at actual claim of that particular patent.

Q.   Perfect. I thought you might ask that.

MR. RHODES:  Could you please mark this.

(Weisner Exhibit 117 for identification, demonstrative.)

MR. GINSBURG:  Note the objection, this is your work product again. As my co-counsel said, its authentication and foundation is an objection.

MR. DAVIS:  Running objection.

THE WITNESS:  I didn't get anything.

Page 304

SHOLEM WEISNER - Highly Confidential

MR. RHODES:  I'll represent that Exhibit 117 is a comparison I made of the Claim 1 of the '798 application and Claim 1 of the '165 application, and I added some highlighting to show similar language between Claim 1 of the 98 application and Claim 1 of the '165 application.

BY MR. RHODES:

Q.   Do you see that?

A.   Yeah, I don't get it all the way. It looks like a rainbow to me. If I focus, I can get what you're trying -- I see you're trying to say what is similar, what's not similar. So whatever is highlighted, the same color is similar. And whatever is just not highlighted is different. I see.

Q.   And would you agree that Claim 1 of the '165 application includes all the limitations of Claim 1 of the '798 application but is narrower because it also adds additional limitations?

Page 305

SHOLEM WEISNER - Highly Confidential

MR. DAVIS:  Objection; calls for a legal conclusion.

A.   Probably they narrowed it down to get it -- get the examiner to accept it, right. That's what they do. That's what patent counsel does.

Q.   Right.

So you filed one patent that was broader and then the examiner rejected it?

A.   Yeah.

Q.   And then you abandoned it and filed a new narrower patent. Right?

A.   Makes a lot of sense.

MR. DAVIS:  Objection; calls for a legal conclusion.

Q.   And the narrower patent you filed --

THE WITNESS:  I still need to answer, right?

MR. DAVIS:  Yes. Let me answer first.

THE WITNESS:  I get confused. Okay. I'll let you -- I'll wait.

77 (Pages 302 - 305)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 350

SHOLEM WEISNER - Highly Confidential

Q. Why was Mr. Nemanov's signature omitted from the Power of Attorney?

A. He wasn't interested. He wasn't even interested in providing the patent in the beginning. I had to convince him.

Q. So Mr. Nemanov wasn't interested in prosecuting the patent?

A. He's still not interested. I don't think he was ever interested in the patent in the first place. I forced him to take percentages because I wanted him to be excited about something.

Q. Turning to FH 346. Here's a notice of acceptance of Power of Attorney.

Do you see that?

A. Yes.

Q. And this document was mailed on July 12, 2017. True?

A. I see that, yes.

Q. Between June 1, 2017, when you submitted your petition for revival, and

Page 351

SHOLEM WEISNER - Highly Confidential

July 12, 2017, when you submitted this notice of acceptance of Power of Attorney, when did you convince Mr. Nemanov to pursue this patent application?

A. June? It was June? I thought it was May. When Marc Friedman signed, it was May, no?

Q. I think the document was June 1st and the signature was May 29th. But I can double-check. We can say May. I'll ask that way.

A. I may have the signature in May, and I think I contact Horowitz in May, in May.

Q. Sure, I'll correct my question.

Between May 29, 2017 when you submitted your petition for revival and July 12, 2017 when you submitted this notice of acceptance of Power of Attorney, when did you convince Mr. Nemanov to pursue this patent application?

Page 352

SHOLEM WEISNER - Highly Confidential

A. I kept convincing him the whole time, even before I -- even before I went to Mr. Horowitz. I spoke to him and said I'm going to revive this, I'm better now and I'm going to pursue what I want to pursue. I mean, he said yeah, yeah, yeah, whatever. He didn't like -- he's a funny -- he's a funny character. You have to like -- you have to make -- you'll find out if you talk to him.

I convinced him the whole time. Then I said listen, I can't do it without you. So he did it.

Q. Why did Mr. Nemanov not want to continue the patent application?

A. He doesn't have -- he didn't have an interest in it. He has an interest in trading -- he believes that he figured out a way to trade the market or something. And he was like busy. And instead of spending money and reviving the patent or pursuing this, I should give him the money for the market. So basically it was about that.

Page 353

SHOLEM WEISNER - Highly Confidential

Q. I know it was almost a decade ago, but do you remember when you successfully convinced Mr. Nemanov to pursue the patent application?

A. No. It was a process. It was a process.

Q. Let's turn to FH 337?

A. 37?

Q. Actually, let's -- yes, FH 337.

So on June 29, 2017, Mr. Nemanov did sign a Power of Attorney. True?

A. Yes.

Q. And this is his signature with the letters?

A. Let me see.

Q. Sorry, FH 337.

A. Yes.

Q. And on FH 338, you also signed this -- sorry, this is your May 29, 2017 signature of the Power of Attorney?

A. Yeah.

Q. With the squiggles? Right,

89 (Pages 350 - 353)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 378

SHOLEM WEISNER - Highly Confidential

STATE OF _____ )

ss:

COUNTY OF _____ )

I, SHOLEM WEISNER, the witness herein, having read the foregoing testimony of the pages of this deposition, do hereby certify it to be a true and correct transcript, subject to the corrections, if any, shown on the attached page.

SHOLEM WEISNER

Subscribed and affirmed to before me

This _____ day of _____, 2025.

_____

Notary Public

Page 379

SHOLEM WEISNER - Highly Confidential

C E R T I F I C A T E

STATE OF NEW YORK   )

: ss.

COUNTY OF NEW YORK   )

I, ERIC J. FINZ, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That SHOLEM WEISNER, the witness whose deposition is hereinbefore set forth, was duly affirmed by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 25th day of February, 2025.

ERIC J. FINZ

Page 380

SHOLEM WEISNER - Highly Confidential

E X H I B I T S

DESCRIPTION                PAGE

(Weisner Exhibit 100 for       73 identification, Observer Dispatch article, production numbers GOOG-WSN 36359 through GOOG-WSN 36360.)

(Weisner Exhibit 101 for       76 identification, document headed "information," production numbers GOOG-WSN 36361 through GOOG-WSN 36369.)

(Weisner Exhibit 102 for       89 identification, affidavit, production numbers GOOG-WSN 36388 through GOOG-WSN 36391.)

(Weisner Exhibit 103 for       101 identification, New York Jewish Week article, production numbers GOOG-WSN 36370 through GOOG-WSN 36387.)

(Weisner Exhibit 104 for       106 identification, file history, numbers FH 98 through FH 517.)

Page 381

SHOLEM WEISNER - Highly Confidential

E X H I B I T S (Continued)

DESCRIPTION                PAGE

(Weisner Exhibit 105 for       107 identification, email dated December 30, 2009, production numbers NEMANOV 7.)

(Weisner Exhibit 106 for       107 identification, email dated March 15, 2010, production numbers NEMANOV 6.)

(Weisner Exhibit 107 for       107 identification, email dated March 17, 2010, production numbers NEMANOV 5.)

(Weisner Exhibit 108 for       135 identification, risk assessment.)

(Weisner Exhibit 109 for       138 identification, nursing intake form.)

(Weisner Exhibit 110 for       147 identification, discharge summary.)

96 (Pages 378 - 381)